# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 12-688V
Filed: June 14, 2018

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | | |
| DIANA M. DOBBS, | * | UNPUBLISHED |
| | * | |
| Petitioner, | * | |
| v. | * | |
| | * | Decision on Attorneys' Fees and Costs |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * | | |

*Jessica W. Hayes, Esq.*, Murray Law Firm, New Orleans, LA, for petitioner.
*Glenn A. MacLeod, Esq.*, U.S. Department of Justice, Washington, DC, for respondent.

### DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Roth**, Special Master:

On October 12, 2012, Diana Dobbs ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program.[2] Petitioner alleges that she developed an allergic reaction and/or post-vaccination neuropathy as a result of receiving a trivalent influenza ("flu") vaccination on or about October 12, 2009. Petition, ECF No. 1. Respondent denied causation; nevertheless, the parties stipulated to a damages award, and the undersigned issued a decision awarding damages on July 18, 2017. *See* ECF No. 86.

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I intend to post this decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2012)). In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to delete medical or other information, that satisfies the criteria in 42 U.S.C. § 300aa-12(d)(4)(B). Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted decision. If, upon review, I agree that the identified material fits within the requirements of that provision, I will delete such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I. Procedural History

Petitioner filed her petition on October 12, 2012. ECF No. 1. This case was initially assigned to Special Master Patricia Campbell-Smith. ECF No. 2. Petitioner filed medical records on December 11, 2012, and a status report the following week. ECF Nos. 6-8. On February 28, 2013, petitioner filed two motions to issue subpoenas, which were granted. ECF Nos. 10-13. This case was reassigned to Special Master Hamilton-Fieldman on March 4, 2013. Petitioner filed additional records in March, July, and October of 2013, and filed a statement of completion on December 6, 2013. ECF Nos. 16-17, 23, 25-27. On February 3, 2014, respondent filed a status report requesting that petitioner file outstanding medical records so that respondent could fully evaluate the claim. ECF No. 28. Petitioner filed additional medical records in May, June, and August of 2014.[3] ECF Nos. 31, 33-35.

The initial status conference was held on August 19, 2014. During the conference, Special Master Hamilton-Fieldman encouraged the parties to discuss settlement. Petitioner was ordered to file an amended petition in order to clarify the injury alleged and Respondent was ordered to file a Rule 4(c) Report thereafter. *See* Scheduling Order, issued Aug. 19, 2014.

Petitioner filed an amended petition on September 23, 2014. ECF No. 36. On November 17, 2014, respondent filed a motion to request that the deadline for filing the Rule 4 Report be suspended while the parties discussed settlement. Respondent also stated that petitioner was in the process of putting together a settlement demand. ECF No. 37. Respondent's motion was granted, and petitioner was ordered to file a status report advising the Court on the parties' progress toward settlement. Order, ECF No. 38.

On January 21, 2015, petitioner filed a status report stating that petitioner had not yet submitted a settlement demand "because reasonable projected reimbursable expenses and anticipated loss of earnings are still being calculated. ECF No. 39. Petitioner was ordered to file a status report updating the Court on the parties' settlement discussions. Scheduling Order, issued, Jan. 23, 2015. On February 25, 2015, petitioner filed another status report stating that petitioner had still not yet submitted a settlement demand to respondent. ECF No. 40.

A status conference was held on July 10, 2015, during which petitioner's counsel stated that she anticipated submitting a settlement demand to respondent by mid-July. Special Master Hamilton-Fieldman encouraged petitioner to submit a demand as soon as possible. Order, ECF No. 44.

Two weeks later, on July 21, 2015, petitioner filed two motions to issue subpoenas, which were granted. ECF Nos. 48-51. On August 1, 2015, petitioner filed a status report stating that a settlement demand would be sent to respondent on August 4, 2015. ECF No. 52. Three days later, petitioner filed another status report confirming that the settlement demand had been sent. ECF No. 53. Petitioner filed additional medical records on August 19, 2015. ECF No. 56.

---

[3] In the interim, petitioner filed two motions for extensions of time to file the outstanding medical records requested by respondent. ECF Nos. 29-30.

On November 1, 2015, respondent filed a status report confirming that he had submitted a response to petitioner's settlement demand on August 6, 2015 (i.e., two days after petitioner sent respondent a settlement demand), requesting that petitioner "provide financial background and other supporting information so that respondent could fully evaluate petitioner's claim for compensation, in particular her lost earnings demand." ECF No. 57. Petitioner was ordered to file a status report confirming that petitioner sent respondent the requested documentation. Scheduling Order, issued, Sept. 3. 2015.

On October 1, 2015, petitioner filed a status report confirming that petitioner's financial records were sent to respondent. ECF No. 58. Petitioner filed additional records on October 28, 2018. ECF Nos. 59-61.

On November 24, 2015, respondent filed a status report stating that respondent was reviewing petitioner's most recently filed records in connection with petitioner's settlement demand and that petitioner was in the process of obtaining her most recent Social Security Earnings Statement to support her claim of eligibility for Social Security Disability benefits. ECF No. 62. Petitioner filed additional records on December 21, 2015. ECF No. 63.

This case was reassigned to me on January 14, 2016. ECF No. 65. Petitioner filed additional records on January 26, 2016. ECF No. 65. A status conference was held on January 27, 2017. During the status conference, the parties were encouraged to continue efforts to settle this matter. Respondent was ordered to file a status report confirming that respondent sent a response to petitioner's settlement demand. Order, ECF No. 67.

Petitioner filed additional records on February 23, 2016. ECF No. 68. On March 8, 2016, respondent filed a status report stating that respondent forwarded a response to petitioner's settlement demand. ECF No. 70.

A status conference was held on April 6, 2016, during which petitioner's counsel advised that she would like to submit a counteroffer to respondent and expects to do so within the next several days. Petitioner was ordered to file a status report setting forth the parties' progress toward settlement within 30 days. ECF No. 71.

On May 6, 2016, petitioner filed a status report stating that she "has experienced delays associated with obtaining documents . . . so a counteroffer has not yet been submitted to respondent." ECF No. 72. Petitioner was ordered to file a status report updating the Court on the parties' progress toward resolving this matter by June 10, 2016. Scheduling Order, issued, May 9, 2016.

Petitioner failed to file her status report pursuant to the Court's May 9, 2016, Order, or timely request an extension of time before the deadline set by the Court. An Order to Show Cause was issued. *See* Order to Show Cause, ECF No. 73.

Seven days later, on July 5, 2016, petitioner filed a status report stating that a counteroffer was sent to respondent. ECF No. 74. Petitioner was ordered to file a joint status report on the parties' progress toward settlement. Scheduling Order, issued, Aug. 23, 2016.

On January 6, 2017, petitioner filed a joint status report stating that petitioner received the Medicaid lien and associated itemization charges and forwarded that information to respondent for review. ECF No. 79. Two months later, on March 6, 2017, petitioner filed another joint status report indicating that the parties had made significant progress toward reaching a settlement agreement in this matter. ECF No. 80. The following month, petitioner filed another joint status report advising the Court that the parties had reached a tentative agreement to settle this case. ECF No. 81.

The parties stipulated to a damages award, and I issued a decision awarding damages on July 20, 2017. ECF No. 86. Thereafter, petitioner was ordered to file her motion for attorneys' fees and costs by no later than January 16, 2018. Scheduling Order, issued, July 20, 2017.

On January 16, 2018, petitioner filed an unopposed motion for extension of time to file her motion for attorneys' fees and costs, which was granted. ECF Nos. 92-93.

On February 15, 2018, petitioner filed a Motion for Attorneys' Fees and Costs, requesting $59,922.50 in attorneys' fees and $6,569.96 in attorneys' costs. Motion for Fees, ECF No. 94. In addition to her request for fees and costs for her vaccine attorney, petitioner requested a total of $5,005.33 in attorneys' fees and costs for work performed by Scott E. Brady. *Id*. Respondent did not oppose the request in substance, but instead asked that the undersigned to exercise her discretion in determining the proper amount to be awarded. Respondent's Resp., ECF No. 96.

Following review of petitioner's Motion for Fees, the undersigned issued an Order on March 28, 2018, noting that the application for fees and costs must "sufficiently detail and explain the time billed so that a special master may determine . . . whether the amount requested is reasonable," or an award of attorneys' fees may be reduced for "vagueness" in billing. *J.W. ex rel. Wilson v. Sec'y of Health & Human Servs.*, No. 15-1551V, 2017 WL 877278, at *4 (Fed. Cl. Spec. Mstr. Feb. 10, 2017). The undersigned also noted that attorneys who perform non-attorney-level work are compensated at a rate comparable to what would be paid at a paralegal's hourly rate. *See O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Moreover, an attorney who is not eligible to practice in the Vaccine Program cannot recover attorneys' fees. *Underwood v. Sec'y of Health & Human Servs.*, No. 00-357V, 2013 WL 3157525, at *4 (Fed. Cl. Spec. Mstr. May 31, 2013). Accordingly, petitioner was ordered to file a supplement to her Motion for Fees and provide the basis upon which the work performed by Scott E. Brady is compensable under the Vaccine Program. Order, ECF No. 97.

On April 30, 2018, petitioner filed a supplement to her request for attorneys' fees and costs citing two decisions where fees for referring attorneys have been awarded. *See Avila v. Sec'y of Health & Human Servs.*, No. 14-605V, 2016 WL 6995372, at *2 (Fed. Cl. Spec. Mstr. Nov. 4, 2016); *Barrett v. Sec'y of Health & Human Servs.*, No. 09-389V, 2014 WL 2505689, at *14 (Fed. Cl. Spec. Mstr. May 13, 2014). Petitioner's counsel argued that the pre-filing tasks completed by Scott Brady as a referring attorney were reasonable and essential to the development of the claim. Moreover, petitioner's counsel advised that "the time sheet

4

[submitted] is the best information that can be provided at this juncture as work in this case spanned from 2011 to the present." ECF No. 98 at 3.

## II. Applicable Legal Standards

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs." § 15(e)(1). If a petitioner succeeds on the merits of his or her claim, the award of attorneys' fees is automatic. *Id.*; *see Sebelius v. Cloer*, 569 U.S. 369, 373 (2013). However, a petitioner need not prevail on entitlement to receive a fee award as long as the petition was brought in "good faith" and there was a "reasonable basis" for the claim to proceed. § 15(e)(1).

The Federal Circuit has endorsed the use of the lodestar approach to determine what constitutes "reasonable attorneys' fees" and "other costs" under the Vaccine Act. *Avera*, 515 F.3d at 1349. Under this approach, "[t]he initial estimate of a reasonable attorney's fee" is calculated by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id*. at 1347-48 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). That product is then adjusted upward or downward based on other specific findings. *Id*.

A "reasonable hourly rate" is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id*. at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). This rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of petitioner's attorney." *Rodriguez* v. *Sec'y of Health & Human Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349). There is a "limited exception" that provides for attorneys' fees to be awarded at local hourly rates when "the bulk of the attorney's work is done outside the forum jurisdiction" and "there is a very significant difference" between the local hourly rate and forum hourly rate. *Id*. This is known as the *Davis County* exception. *See Hall* v. *Sec'y of Health & Human Servs.*, 640 F.3d 1351, 1353 (Fed. Cir. 2011) (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist.* v. *U.S. EPA*, 169 F.3d 755, 758 (D.C. Cir. 1999)). For cases in which forum rates apply, *McCulloch* provides the framework for determining the appropriate hourly rate range for attorneys' fees based upon the attorneys' experience. *See McCulloch* v. *Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has issued a fee schedule that updates the *McCulloch* rates to account for inflation in subsequent years.[4]

Once the applicable hourly rate is determined, it is applied to the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. The application for fees and costs must "sufficiently detail and explain the time billed so that a special master may determine . . . whether the amount requested is reasonable," and an award of attorneys' fees may be reduced for "vagueness" in billing. *J.W. ex rel. Wilson* v. *Sec'y of Health & Human Servs.*, No. 15-1551V, 2017 WL 877278, at *4 (Fed. Cl. Spec. Mstr. Feb. 10, 2017). Moreover, counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise

---

[4] This fee schedule is posted on the court's website. *See* Office of Special Masters, *Attorneys' Forum Hourly Rate Fee Schedule: 2015-2016*, http://www.uscfc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf.

unnecessary." *Saxton ex rel. Saxton* v. *Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley* v. *Eckerhart*, 461 U.S. 424, 434 (1983)). "Unreasonably duplicative or excessive billing" includes "an attorney billing for a single task on multiple occasions, multiple attorneys billing for a single task, attorneys billing excessively for intra office communications, attorneys billing excessive hours, [and] attorneys entering erroneous billing entries." *Raymo* v. *Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 703 (2016).

Furthermore, some tasks are generally compensated at a reduced rate. Attorneys who perform non-attorney-level work are compensated at a rate comparable to what would be paid to a paralegal. *See O'Neill* v. *Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL 2399211, at \*9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Hours spent traveling are ordinarily compensated at one-half of the normal hourly attorney rate. *See Scott* v. *Sec'y of Health & Human Servs.*, No. 08-756V, 2014 WL 2885684, at \*3 (Fed. Cl. Spec. Mstr. June 5, 2014) (collecting cases). Finally, some tasks are never compensable. For instance, "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program." *Matthews* v. *Sec'y of Health & Human Servs.*, No 14-1111V, 2016 WL 2853910, at \*2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016). And clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See, e.g.*, *McCulloch*, 2015 WL 5634323, at \*26. Non-compensable clerical and secretarial tasks include making travel arrangements, reviewing and paying invoices, setting up meetings, organizing files, scheduling conference calls, and reviewing files for consistency. *J.W.*, 2017 WL 877278, at \*3; *Barry v. Sec'y of Health & Human Servs.*, No. 12-039V, 2016 WL 6835542, at \*4 (Fed. Cl. Spec. Mstr. Oct. 25, 2016).

It is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522. In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen* v. *Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming special master's reduction of attorney and paralegal hours); *Guy* v. *Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (same). Ultimately, special masters have substantial discretion in awarding fees and costs, and may adjust a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners with notice and opportunity to respond. *See Sabella* v. *Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (Fed. Cl. 2009). Special masters need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *See Broekelschen*, 102 Fed. Cl. at 729.

### III. Discussion

**A.    Vaccine Attorneys' Fees**

Petitioner requests $59,922.50 in attorneys' fees for work performed by her vaccine attorney, Ms. Hayes. ECF No. 94-1. The requested hourly rate, *see id.* at 2, is consistent with the rates previously found to be reasonable in cases involving petitioner's counsel. *See e.g.*, *Truax v. Sec'y of Health & Human Servs.*, No. 15-1099V, 2018 WL 1310480, at \*1 (Fed. Cl. Spec. Mstr. Feb. 13, 2018); *Crosby v. Sec'y of Health & Human Servs.*, No. 15-0556V, 2017 WL 7101151, at \*3 (Fed. Cl. Spec. Mstr. Aug. 29, 2017). Therefore, the undersigned finds the requested rates to be reasonable.

The hours expended, however, must be reduced, as a number of the hours billed are "excessive, redundant, or otherwise unnecessary" and the billing records are vague or provide insufficient information in order to determine the work that was performed. *Saxton*, 3 F.3d at 1521.[5] This is not the first case in which petitioner's counsel's fees have been reduced as a result of deficient billing records or insufficient explanation of the billing records. *See Crosby*, 2017 WL 7101151, at *2. Like *Crosby*, the billing record submitted by petitioner's counsel is laced with deficiencies. For example, there are tasks billed which fall within the category of paralegal work, such as reviewing files for consistency, organizing files, and corresponding with medical providers to obtain medical records.[6] "These types of entries do not constitute billable time" or represent time that should be billed at paralegal rates, not at attorney rates. *J.W.*, 2017 WL 877278, at *3. There are also instances of duplicative billing,[7] as well as entries for tasks that are vague in description and do not provide any basis for determining their reasonableness.[8] The requirement of detailed billing is not new, nor are the consequences for failing to follow it—when billing records lack "sufficient detail," the "award may be reduced accordingly." *Bell v. Sec'y of Health & Human Servs.*, 18 Cl. Ct. 751, 760 (1989) (citation omitted). Finally, petitioner's counsel billed excessive amounts of time for the preparation and review of simple filings—e.g., .20 hours for "Review of NOTICE OF ASSIGNMENT," .10 hours for Review of NOTICE OF APPEARANCE," .70 hours for "Review of 15 WEEK STIPULATION"—and thus, a reduction is warranted. *See* ECF No. 94-1 at 1-2.

For these reasons, the undersigned finds that the requested $59,922.50 should be reduced by 20%. Accordingly, $47,938.00 is awarded in attorneys' fees.

**B.     Vaccine Attorneys' Costs**

Petitioner requests a total amount of $6,569.96 in attorneys' costs. ECF No. 94-2 at 1. The requested costs consist of the filing fee, shipping costs, medical record fees, and medical expert fees. Upon review of petitioner's application, the undersigned finds that a cost reduction is appropriate as a result of petitioner's counsel's failure to provide any documentation supporting the amounts requested.

---

[5]     The following entries are examples and are not exhaustive; they simply provide a sampling.

[6]     *See, e.g.*, ECF No. 94-1 at 2 ("Review and summary of DOBBS000001"); *id.* ("Review and summary of DOBBS000497"); *id.* at 3 ("Letter to OUR LADY OF THE LAKE REGIONAL MEDICAL CENTER re MEDICAL RECORD(S)"); *id.* ("Fax to THE BATON ROUGE CLINIC AMC re MEDICAL RECORD(S)"); *id.* at 4 ("Letter to CLIENT re FORM SSA-3288"); *id.* ("Fax from Optum [United HealthCare – Louisiana] re LIEN(S)").

[7]     *See, e.g.*, ECF No. 94-1 at 1 ("Review of Order"); *id.* ("Review of Order"); *id.* ("Preparing, review and filing of UNOPPOSED MOTION FOR EXTENSION OF TIME"); *id.* ("Preparing, review and filing of UNOPPOSED MOTION FOR EXTENSION OF TIME"); *id.* ("Review of Order"); *id.* ("Review of Order").

[8]     *See, e.g.*, ECF No. 94-1 at 7 (subject "RE: Dobbs, 12-688"); *id.* (subject "Automatic Reply: Dobbs 12-688); *id.* at 8 (subject "RE: Dobbs v. HHS").

The $2,600.00 in costs for retainer fees charged by Dr. Nathaniel Fentress and Shael Wolfson, PHD, are not supported by any documentation and are therefore not compensable. A request was made by the undersigned for all supporting documentation for these charges. Counsel failed to provide any information—i.e., billing records, invoices, and/or hourly rate(s)—to support the $2,600.00 in costs for expert retainer fees. Thus, the amount will not be reimbursed. Additionally, there is no information provided to explain who Mr. Geoffrey Dumon is, his role in this case, or why his travel expenses should be reimbursed. Counsel will therefore not be reimbursed $275.56 for mileage for Mr. Dumon. *See* ECF No. 94-2 at 1. As previously noted, when billing records lack "sufficient detail," the "award may be reduced accordingly." *Bell v. Sec'y of Health & Human Servs.*, 18 Cl. Ct. 751, 760 (1989) (citation omitted).

Petitioner's counsel also requested reimbursement for costs that are incurred in the normal course of business that are not compensable—e.g., "postage" and "telephone conference." Therefore, counsel will only be reimbursed $631.00 out of the $1,526.14 in miscellaneous costs for "parking," "employment records," "educational transcript," "earning statement[s]," and "records." *See* ECF No. 94-2. Finally, counsel will not be reimbursed for costs on "WESTLAW." *Id.*

In sum, counsel will only be reimbursed for costs that were necessary and where sufficient detail was provided.[9] Subtracting the unnecessary and non-compensable costs explained above—$2,600.00 in retainer fees; $895.14 in overhead costs; $106.32 for Westlaw; $275.56 for reimbursed mileage—reduces the requested $6,569.96 to $2,692.94. Therefore, $2,692.94 is awarded in attorneys' costs.

**C.     Referring Attorneys' Fees and Costs**

Petitioner also requests $5,005.33 in fees and costs for work performed by Scott E. Brady, whose work on this matter predated the filing of the petition. From the billing record it appears that Mr. Brady was initially retained to represent the petitioner, and then referred this case to Ms. Hayes.

A referring attorney who performs no direct work in the litigating of a Vaccine Court petition may obtain a fee award. *See, e.g., Bell v. Sec'y of Health & Human Servs.,* No. 07–454V, 2008 WL 4657081, at 1 (Fed. Cl. Spec. Mstr. Oct. 2, 2008); *Hussey v. Sec'y of Health & Human Servs.,* No. 89–69V, 1990 WL 293391, at *3–4 (Fed. Cl. Spec. Mstr. June 27, 1990). However, the reasonableness of fees associated with a referring attorney's pre-filing activity is subject to the same standard that governs the fee requests of the attorney who litigated the case. *See Barrett v. Sec'y of Health & Human Servs.*, No. 09-389V, 2014 WL 2505689, at *14 (Fed. Cl. May 13, 2014).

According to his profile online, Mr. Brady has been a member of the Louisiana Bar since 1997; thus, the applicable range under *McCulloch* is $300-$375 if Mr. Brady were eligible for

---

[9]     Counsel was provided ample opportunity to provide detailed records and invoices in support of this application by Court Order and by subsequent emails from Chambers. Counsel responded that she would not provide further documentation in support of her application.

8

forum rates.[10] Mr. Brady is not admitted to practice in the U.S. Court of Federal Claims. In order to be eligible to practice in the Vaccine Program, an attorney must be admitted to practice in the U.S. Court of Federal Claims; an attorney who is not eligible to practice in the Vaccine Program cannot recover attorneys' fees. *Underwood v. Sec'y of Health & Human Servs.*, No. 00-357V, 2013 WL 3157525, at *4 (Fed. Cl. Spec. Mstr. May 31, 2013); *see* Vaccine Rule 14(a)(1). According to his profile, Mr. Brady specializes in personal injury litigation, which is generally compensated on a contingency fee basis. No documentation was provided in support of how Mr. Brady arrived at the hourly rate he submitted for his time of $350 per hour. Therefore, having no background in the Vaccine Court, failing to provide the basis for the $350 per hour rate, and providing no support for whether Mr. Brady qualifies for forum rate, Mr. Brady will be paid at a rate of $250 per hour.

Petitioner also requests a total of $62.25 (.83 hours at $75 per hour) for work performed by Greta Bordelon, a paralegal at Mr. Brady's firm.[11] *See* ECF No. 94-4. The undersigned finds the requested rate for the work performed by Ms. Bordelon to be reasonable. The hours expended in this case by Mr. Brady and his staff appear to be reasonable.

Therefore, applying the hourly rate modification discussed above, 12.57 hours at $250 per hour (or $3,142.50) for work performed by Mr. Brady and .83 hours at $75 per hour (or $62.25) for work performed by Ms. Bordelon reduces the requested $4,437.43 to $3,204.75. Therefore, $3,204.75 is awarded in attorneys' fees. Finally, the undersigned finds petitioner's requested $567.90 in costs associated with securing medical records to be reasonable. Mr. Brady is awarded a total of $3,772.65.

### IV. Total Award Summary

Based on the foregoing, the undersigned **GRANTS IN PART** petitioner's Motion for Attorneys' Fees and Costs. Accordingly, the undersigned awards the following:[12]

- **$50,630.94**, representing $47,938.00 in attorneys' fees, and $2,692.94 in costs, in the form of a check payable jointly to petitioner and petitioner's counsel, Jessica W. Hayes, Esq.

---

[10] No information was provided about Mr. Brady in support of petitioner's application for fees. The Court obtained this information based on Mr. Brady's firm's website. *See* Scott E. Brady, Bohrer Brady LLC, http://www.bohrerbrady.com/firm-overview/scott-e-brady/ (last visited June 6, 2018).

[11] The Court obtained this information based Ms. Bordelon's identity from Mr. Brady's firm's website. *Id*.

[12] This amount is intended to cover all legal expenses incurred in this matter. This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered. Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. *See Beck* v. *Sec'y of Health & Human Servs.*, 924 F.2d 1029 (Fed. Cir. 1991).

- **$3,772.65**, representing $3,204.75 in attorneys' fees, and $567.90 in costs associated, in the form of a check payable jointly to petitioner and petitioner's referring attorney, Scott E. Brady, Esq.[13]

The clerk shall enter judgment accordingly.[14]

**IT IS SO ORDERED.**

s/ Mindy Michaels Roth
Mindy Michaels Roth
Special master

---

[13] Both the checks to Ms. Hayes and Mr. Brady should be forwarded to Ms. Hayes for distribution.

[14] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.